UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TUMEKEKA ROBINSON
PLAINTIFF,

v.   CIVIL ACTION No.: _____

AVIALL SERVICES, INC.
DEFENDANT.

## PLAINTIFF'S ORIGINAL COMPLAINT

### JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over Plaintiff's federal claims under Title VII of the Civil Rights Act, as amended by the Equal Employment Opportunity Act of 1972 and the Civil Rights Act of 1991, 42 U.S.C.A. §§2000e to 2000e-17. .

2.  Venue is proper before this Court pursuant to 42 U.S.C.A. §2000e-5(f)(3), in that the unlawful employment practices complained of occurred at the Aviall facility, Dallas County, Texas. Plaintiff reserves the right to invoke the supplemental jurisdiction of this Court to entertain pendant claims arising under state law and so related to the claims in this suit as to be part of the same case and/or controversy.

3.  All conditions precedent to filing suit has been complied with. Plaintiff Tumekeka Robinson brings suit as a result of the sexual harassment and subsequent retaliation she suffered at the hands of her supervisor.

### PARTIES

4.  Plaintiff, Tumekeka Robinson ("Robinson"), is a U.S. Citizen, of full age and the subject of the actions complained of in this Complaint.

Plaintiff's Original Complaint   Page 1

5. Defendant, Aviall Services, Inc. is a foreign for-profit corporation operating in Texas and incorporated in Delaware. Defendant Aviall Services, Inc's. ("Aviall") principal place of business is 2750 Regent Blvd., DFW Airport, Texas. Defendant's registered agent for service is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas, 78701-3218. Service of process will be performed by a private process server.

## FACTUAL ALLEGATIONS

6. At all times relevant herein, Defendant Aviall is and was a foreign for profit corporation, a division of Aviall, Inc., which in turn is a wholly owned subsidiary of The Boeing Company. Defendant Aviall operates as a distributor of original equipment manufacturer and aftermarket parts to aircraft owners and operators.

7. Ms. Robinson is a female and a member of a protected class under the law. She is happily married and mother of two children. She started working for Defendant Aviall in December 2008. Ms. Robinson was well-qualified to perform the duties of the position she held. At all times relevant, Ms. Robinson was a responsible and productive employee and had not been the subject of any disciplinary actions.

8. In the months preceding December 2009, Ms. Robinson's supervisor, Greg Cooks ("Supervisor Cooks"), engaged in an increasing pattern of making sexually-related comments and/or gestures towards Ms. Robinson and other female co-workers. She initially ignored them and increasingly sought to avoid being around Supervisor Cooks. Recognizing the economic situation, Ms. Robinson attempted to avoid creating problems by reporting Supervisor Cooks' actions.

9. On December 9, 2009, Ms. Robinson detected a defect in a part and approached Supervisor Cooks to inform him of what she had discovered. Supervisor Cooks asked that Ms. Robinson come

to his cubicle to discuss the part. Ms. Robinson did as requested, and upon entering the cubicle, she placed the part on her supervisor's desk. She then proceeded to point out the defect and discrepancies in the part. Suddenly and without provocation, Supervisor Cook grabbed her right thigh from behind and sharply pulled her into him. He then ran his hand up her right leg and side to her right breast, which he then squeezed and said, "Oh girl, your titties are soft." She immediately fled her supervisor's cubicle and returned to her work area crying.

10. Upon her return to the work area crying, several co-workers inquired as to what had happened and upon being told, notified the Human Resources department. Kim Nones, of the Human Resource Department then took Ms. Robinson to the Plant Manager to whom she explained what had taken place and had been occurring. The Plant Manager then transferred Ms. Robinson to another department in the plant and informed her she would be working there until further notice.

11. The following day, December 10, 2009, Ms. Robinson met with representatives from Defendant's Human Resource Department to take her statement. She recounted what had taken place, as well as what had occurred in the months prior. Ms. Robinson was informed that an investigation would be initiated. She further identified co-workers who may have seen Supervisor Cooks' inappropriate conduct or heard his lewd and suggestive comments.

12. On or about December 17, 2009, Ms. Robinson met with one of the Human Resource representatives and she signed a document containing her previous statements. Shortly thereafter, Ms. Robinson became aware that several of her co-workers were interviewed about her complaint. At this same approximate time, Ms. Robinson began to hear of rumors that she had been having an affair with another co-worker. This was particularly hurtful in view of what she had already gone through with her former supervisor. She understood that the source of the rumors was former

Supervisor Cooks.

13. Shortly after Ms. Robinson was transferred on December 9, 2009, she began to notice that her former supervisor, Supervisor Cooks, was visiting her department. Over the course of the next several weeks, this went from an occasional visit other day or so to several visits during the course of one shift. This despite that fact that her former supervisor had rarely gone to the department Ms. Robinson was now assigned prior to her being transferred there. Further, Supervisor Cooks had no responsibilities or tasks in the department Ms. Robinson had been transferred to. She noted that he routinely would look at her and occasionally make rude comments to her.

14. On or about January 12, 2010, Ms. Robinson went to the Human Resource department and requested a copy of the statement she had signed. She was told she could not have a copy of her statement. Furthermore, she was told the investigation had been concluded. She was never informed of the outcome of the investigation, what actions would be taken to prevent her from being harassed further by her former supervisor.

15. About a week later, on or about January 19, 2010, Supervisor Cooks' girlfriend confronted Ms. Robinson and verbally accosted her, yelling at her to the effect "that it was messed up you went to the company about Greg…How could you jeopardize his job, he has kids to take care of… That shit ain't right what you did… That you should have come to me first." This confrontation left Ms. Robinson shaken and upset.

16. Ms. Robinson then went to inform the representatives at the Human Resources department of what had happened. She was informed that the conduct by Supervisor Cooks' girlfriend was not right and she shouldn't be speaking to Ms. Robinson about that. During this same time, Ms. Robinson informed the representative of Supervisor Cooks increasing visits and actions directed

towards her in the new department. To her surprise, she was informed there nothing that Defendant could do about that, despite the fact that he had no duties or responsibilities in Ms. Robinson's new department.

17. The actions complained of by Ms. Robinson continued until such time as she suffered a serious injury at work. Since that time, she has not returned to work and was subsequently terminated by Defendant.

## CLAIMS

### GENDER DISCRIMINATION and RETALIATION IN VIOLATION OF TITLE VII

18. Plaintiff incorporates by reference all factual allegations of paragraphs 6 through 17 above as though fully set forth at length herein.

19. This cause of action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, asserting that Defendant Aviall supervisor, while in the course and scope of employment, subjected Ms. Robinson to disparate treatment due to her gender, and subsequent to her reporting of the harassment, she was subjected to further harassment for the duration of her employment with Defendant.

### PUNITIVE DAMAGES

20. Plaintiff incorporates by reference all factual allegations of paragraphs 6 through 19 above as though fully set forth at length herein.

21. At all times relevant, Supervisor Cook, acting while in the course and scope of his employment with Defendant Aviall acted with reckless indifference to the rights of Ms. Robinson as outlined above. Further, that Defendant's Human Resource and management personnel were well aware of Supervisor Cooks' actions and that their actions and inactions ratified or otherwise

encouraged Supervisor Cooks' actions and were themselves discriminatory and in violation of federal law.

## ATTORNEY FEES

22. Plaintiff seeks recovery of her reasonable and necessary attorney fees as permitted by law, to include 42 U.S.C. 2000e-5(k).

WHEREFORE, PREMISES CONSIDERED, Plaintiff Tumekeka Robinson request that this Court:

    a. Award retroactive relief so that Plaintiff is made whole for the injuries suffered on account of the unlawful employment discrimination;

    b. Award compensatory damages to Plaintiff against Defendant;

    c. Award damages to Plaintiff for injury to her character and reputation, and her mental anguish;

    d. Award costs of this action to the Plaintiff;

    e. Award reasonable attorney's fees and costs to the Plaintiff;

    f. Award punitive damages against the Defendant for the actions complained of herein; and,

    g. Award such other and further relief as this Court may deem appropriate.

Dated: March 11, 2011

_/s/ David D. Davis_
_____
DAVID D. DAVIS

David D. Davis,
State Bar No.: 00790568

LAW OFFICES OF DAVID D. DAVIS, PLLC
12221 Merit Drive, Suite 670
Dallas, Texas 75251
972.866.9900
972.866.9902
ddd@dddavislaw.net


ATTORNEY FOR PLAINTIFF